Good morning. Good morning, counsel. You may proceed. Good morning. Michael Brody. I'm the head of Hertz Corporation, and may it please the court. The district court in this case entered judgment against Hertz for its non-deceptive, truthful disclosures of the prices it charged its customers. That was error. In addressing this appeal, I'd like to start with two underlying principles, which I think are not in dispute. First, there is no question in this case that Hertz practices are not deceptive. The district court found that no one was deceived. In fact, throughout the entire reservation process, from the first time a customer goes to the website to the time the customer appears at Hertz, the time the customer drives out of the door, the customer knows every dollar the customer will be charged. This is not an instance where a low price is promised and a high price is charged, and quite to the contrary. And that's why the district court found Hertz practices were not deceptive. The second principle that I think affects this appeal is that Nevada law explicitly permitted Hertz to charge the airport concession fee to the customers. Hertz did not have to absorb this fee. The Nevada statute is not a price control statute, nor is it intended to be confiscatory. It doesn't say, Hertz, you have to lower your rates by 10% in Las Vegas, and what, a half percent in Reno. No. It explicitly permits Hertz to charge the airport concession fee to the customers. So the, as I understand it, as a result of this law, not just your Hertz, but basically all the car rental companies, not one will be defeated in exactly what Hertz did in this case. Is that correct? Correct. So if you are liable in this case, because I believe the plaintiffs will charge all the other car rental companies for the same violation, is that correct? The plaintiffs sued at a price. That was a separate lawsuit. They did not sue the other rental companies for reasons known to them. But the statute of limitations had to run so that if they were successful here, they would not be able to go after the rest of the insurance at the car rental companies. I don't want to speak for the plaintiffs, but I think the answer is yes, Your Honor. Okay. In this case, notwithstanding the fact that Hertz's conduct was not deceptive, and there is no finding that anything Hertz did here resulted in a dollar of extra price to the consumer, the district court filed the statute approving it in Hertz from listing the airport concession fee on a separate line. Hertz's error was giving too much information. In telling the consumer that part of the money that was being paid in this airport, that was error. The court further erred in its determination of the remedy, squeezing within the statutory authorization to grant equitable relief, a remedy that was not equitable, did not follow the principles of equity. Counsel, you ask me this, that one of the things that the district court found here was unjust enrichment. In what way, if any, was Hertz enriched? None. It passed on all of the fees to the airport, right? Exactly. On a most key basis, Hertz passed on the fees. The evidence in the record indicates that every dollar collected by Hertz was paid over. There was a separate account in which these fees were kept, and it was cleared out on a regular basis. Is there any legal basis that you can think of where Hertz benefited from the retention of those fees for less than a month? I can think of none here, and if there were some claim of proper benefit measured by the use of the money for a period of days, that wasn't the plaintiff's claim. The damage here is the claims for $57 million. The text of SB 234 suggested that it was a clarifying amendment, at least to me it seemed that way. Under public employee's benefit program responsibility, I guess the federal police department insists that the Nevada Supreme Court treats this persuasive evidence in what the legislature originally intended when there is a clarifying amendment. The district court somehow construed this amendment as being a change in the law. Would you address in what way this was a clarifying amendment, and from your perspective, why it was not a change in the law? While you're on the statute, the 2009 activity changed two portions of the statute. First, it made clear that the language fees paid to airports, the operative language the district court focused on, meant the airport concession fee. It added the language, including without limitation, so it didn't change. It didn't take out fees paid to airports and replace it with direct fee or the sorts of things the plaintiffs are talking about. Instead, it just clarified what was mentioned. Secondly, it addresses the second part of the language that the district court found ambiguous in its Muslim dismissal ruling, and that was the lessee must be language. And instead of having this lessee must pay language, which frankly I think is important to us anyway, it said language that the lessee must pay to rent the car, making clear that as long as the money the lessee is paying is part of the contract of rent, that's the sort of thing that can be charged separately. The reason why we say that's consistent with the prior language is the language in place from back in 1989 referred to things such as mileage that the lessee must pay. Again, mileage is in charge, assessed, if not not, by the rental car companies at their discretion. It's not something imposed by a third party, which was what the district court focused on. And again, all the car rental companies did exactly the same thing. It teaches to a lessee that you're in a new law, right? Whether it was clarifying or not, they all did the same thing. Correct. After the 2009 amendments, I don't think any changes happened because we kind of persisted. Right. That's correct. And at the same time, the leasing authorities, the airports in Reno and Las Vegas reacted to legislative amendments and changed their leases. At one time the leases had prohibited this practice, but in light of these laws the leases were amended to commit precisely what the rental car companies did. Counsel, can you respond to your opponent's argument that the 2009 amendment makes no mention of clarification or of this kind of situation? I think you refer us to AB 612, legislative history. The legislative history, I think, has something for everybody. And as we point out in the briefs, there are references to this amendment being a change and references to it being a modification. The plaintiffs rely on the veto message in which the Nevada governor vetoed this legislation initially. In that veto message, the governor is objecting to other parts of the bill. And you have to keep in mind that the 2009 amendments, in addition to addressing our disposer's statute here, also changed other portions of the rental car's regime, including additional fees. And I think that's what the broader language that speaks to changes about reference, it led to an increase in certain fees. So I'm not. That was not the issue here. It was just a bit of a campaign, not the bill, but the veto. Correct. The portion we're talking about was tacked on to a broader message. And so I think much of the legislative history and legislative statements that are referenced touch on a variety of different provisions. The 2009 amendment has attracted a lot of attention in this case. But I think the original statute, if we go back to the statute that was in place from the very beginning, that statute plainly authorized what Hertz did. It permitted Hertz, it required Hertz, as it always did, to list the all in charge, if there was ever any deception. And it permitted separately listing fees paid to airports and others. And that. In the statute, you say that that was perfectly fair, no problem with it. Why then did the legislature amend, whether clarifying or changing, why did they amend the law? Was it because there was confusion? The district court had historically before ruled to be ambiguous. OK, so the statute was amended only after the district court found the original statute to be ambiguous. Correct, your honor. The district court ruled in 2007. The statute was amended in 2009. It's my understanding the Nevada legislature sits every other year. I think that was the next opportunity for action. And the district court had, in its motion, a dismissal ruling focusing on the two portions of the statute that I addressed found it to be ambiguous. Now, we submit that original ruling was error. That the statute permits Hertz to list any fee, not just direct fees, not certain kinds of fees, but any fees. And this was a fee. What is the date of the cause of action arising in this case? What is the key date? The lawsuit, I don't have the precise date in front of me. The complaint was filed in 2007. And the class period goes back to 2003. So are we free to ignore it after 2003? I think you're free to ignore it. Because I submit the original intent. The huge fee was reflected in the words they chose. It permitted Hertz to list any fee. And this is a fee. As long as that fee is paid to the airports, and this was paid to the airport. I think the 2009 amendments make clear the original intent and resolve the ambiguity that the district court committed. So, with respect to the district court's original construction of the statute, if, arguably, though, we were to find that it was clear on its face and the district court mistook that, what responsibility, if any, do we have to defer to the district court in admitting it? None. The district court ruled in the Rule 12 motion, and as a matter of law, the court denied the motion. When the court ruled in 2009 on liability, the court ruled in a summary judgment motion. So, again, those are subject to plenary review in this court. The last thing I'd like to add about the statute is there's much discussion in the papers about the reason why we have the statute, the question of consumer protection. It is clear from the district court's ruling that there is no deception. The purpose of the statute was to see to it that companies like Hertz would not deceive customers as to the amount they were charging. And the finding that there was no deception goes a long way to resolving any residual questions the court might have about how the statute should be interpreted. Let me ask you about the DTMDA statute. I think I like the California Consumer Statute as well. It piggybacks on an underlying cause of action. Is that correct? By that, I mean if there is no breach of the original statute, then there is no DTPA claim, because you have to have one to have the other quasi-predicate. Is that right? Also, I believe the statute permits a cause of action for deceptive or unfair treatment. It's independent, isn't it? Correct. It defines a variety of things that can be deceptive, but they speak in terms of deception and misrepresentation and our contention is that this court's ruling that there was no deception resolves that claim. Do you want to say something about the class certification? Well, I will, Your Honor. We think the case is best resolved on a proper interpretation of the statute. And given a proper interpretation of the statute and a proper assessment of the remedial statute, which requires some loss, this case cannot be certified as a class. There are variations among class members as to their understanding of the statute, as to their understanding of the charges, and as to loss. Many of the rental car customers are repeat customers. If you go back a second time, they certainly know how they're going to be charged through the transaction laws. So it was error to certify a class as the court did, particularly given its underlying errors of liability and remedy. And the point I made on class certification allows me to touch on the issue of voluntary payment. Nevada accepts the Voluntary Payment Doctrine. Since the district court refused to adopt it in this case, the Nevada Supreme Court has again accepted the Voluntary Payment Doctrine in its Nevada Association Services case. And that doctrine states that a fully informed customer who makes a payment may not recover it thereafter, and the purpose of the statute is to, among other things, promote stability in commercial transactions. In this case, the district court has directed the return of a large amount of money, a portion of the monies received by hers and paid to the airport authorities. From the 2003 to 2009 time period, based on a ruling the court made in 2013, that ruling certainly does not promote stability in commercial transactions and serves no legitimate purpose, given that there's an argument of no deception and there's no evidence of overcharging. So in light of that, the Voluntary Payment Doctrine dovetails deeply into Kurtz's argument that the original intent of the statute, as made clear by the clarifying amendments in 2009, does not create a cause for action. And furthermore, the remedy that the court imposed in its reordering is not a damage remedy. The court took pains to say that it was not and does not fit within the confines of equitable restitution. The fact that Liz has returned and repaid every dollar that it collected pursuant to this method of pricing to the airport authorities shows that equitable restitution, ordered many years later, is inappropriate. Counsel, could I interject a question, please? Of course. Assuming that we were to agree with your class position on the proper interpretation of NR, the Nevada Statute 482.31575, which we see there was no problem with what Ernst did, what happens to the issue on class certification? Well, given that the court has, Your Honor, I think the easiest answer is for me, and I'm going to pause on this, but I'm not sure it's right, but the easiest answer is affirm class certification and the entire class is bound if the case is dismissed. I have to think that through further to see if a predicate for whatever the court were to rule on the disclosure statute would undermine the class certification rule. If, A, in which case only the class representatives would be bound, I think it would depend on the nature of the court's ruling. Okay, thank you. I'll reserve the rest of my time for you. You may do so, Counsel. Thank you very much. Hear from your colleagues. Yes. Good morning. I'm Arthur Stock. On behalf of the appellees and constables, Jim Zobel and Dan Dugan, and the certified trustee, if you could bring the microphone down just a little bit, it would help the OIU very much. This is a legal charge case. It's not a deception or a fraud case. It's not a disclosure case. There's nothing to do with a speech case. Hertz collected an illegal charge from class members, and Judge Hicks ruled that they should get their money back if at all. The statute of issue in this case was passed in 1989 to deal with confusion and misleading charges in rental car deals by Hertz and others. Do you dispute the fact that Hertz remitted 100% of the amount that you say was illegally collected to the airport? Hertz did make rent payments for its properties on the airport. Let me ask you a question. Did Hertz pay to the airport 100% of the money that you claim was illegally collected? We don't know. We don't know if the money was actually traced in that way. We do know that Hertz did make these payments, but we don't have some particular reason to be sure. She goes out one way or another. That's correct. I mean, although they didn't either, right? We do know that it's irrelevant. It would have been a bad lob, but we don't know. But they exactly did. Maybe it is, maybe it isn't. Let's assume for a moment that they did. OK. Where's the unjust enrichment? The unjust enrichment came because Hertz received money that it was not entitled to receive from our clients. Although it was not part of Judge Hicks' decision, there's also a fair amount of evidence that when Hertz put the concession queue recoveries onto the bills, they did not lower their base rates. Rather, they increased the total income that they received from their customers. Did you charge that in your complaint? It's in the record. It's in the response to incident summary judgment briefing. OK, but you didn't charge. You couldn't do anything wrong there, right? Well, it's not. The wrong was in the surcharges. The wrong is not in the way that they raised or lowered their base rates, but it was wrong. I'm really puzzled because, certainly my understanding of the equitable remedy here, not just enrichment, is if the tort fees were, that's a money, that's something, benefited. I don't see where Hertz benefited in any way. How did they get benefited? Well, Hertz benefited because when they started adding this charge, they received more money for each day of rental than they had previously. There's one more benefit. I thought that before everything was fined. It's just un-fined, but that the fees were the same. Is that wrong? The fees paid to the airports were the same. The fees, the amount of money that Hertz received from its customers increased. Do we know that? We have testimony from several Hertz employees to that effect. We also have a contingency expert testimony. But as far as I understand, all of the factual testimony states that they did not decrease their, that the total amount of money they received after the change was made. So, from your perspective, the unjust enrichment was not this fee that was passed on, which is what the district court seemed to rely upon. It was some other amount of money that Hertz received that it would not otherwise have received. Is that correct? That wasn't. You're way out of the record. I want to know where it is. Where in the record does it say that? With respect to the increased profits by Hertz, we have a memorandum from Simon Ellis, I believe, who made a calculation when they started adding concession fee recoveries to a new set of customers in Reno. And he calculated that what he called incremental value, which should be the same as profit, and his voice is still essentially responsible for operations, including setting prices in Reno. He's a judge with Hertz, right? But there are totally others. Oh, yes. And when the district judge made the calculation about unjust enrichment, he relied on this. So the situation's on the record, and it was before the district court judge. Judge Hicks did not rely on this, and he principally relied on it. He also did not provide a remedy for unjust enrichment. He was principally providing that using the equitable principles. So if there's solid unjust enrichment, I mean, the complaint is that not unjust enrichment is okay. And you're saying that they got more money than they were supposed to get, but the district court didn't rely on that? That's correct. The district court relied on something that they passed on to the airport. Is that right? We don't believe that it makes sense to say that Hertz passed on the illegal overcharges to the airport. It makes no sense, but I'm asking you what the district court relied upon in making the calculation about the unjust enrichment. The district court relied on the fact that it was an illegal charge and that Hertz was not entitled to a charge outside of the base rate for the purpose of concession to recovery. And in that sense, if you see more money than it would have, they did not put that charge outside of the base rate. And in what way did it get more money than the other third-party thing that you talked about a minute ago based on the memorandum, which is not part of what the district court relied upon? Hertz can't. Hertz can't. But HertzCop was 10% more money than it would have got if it had not had its surcharge on its bill. See, that's the one you just mentioned, but the district court didn't rely upon that. The district court relied upon the money that Hertz gave to the airport. I'm just confused as to what the Pledwine thing. It seems kind of like you're saying that if you did something wrong, you did it super quick, right? I believe that the district court did take into consideration, it was certainly before the district court, Hertz's actions throughout the class of both before and during the recess period, in respect to which demonstrate that Hertz certainly believed that it would increase its profits by adding a surcharge. Now, is that at all? There's additional information on that, including Hertz's initial decision to charge the decision through hovering. There are several different proponents who were involved at Hertz at that time who explained that they thought it would improve their competitive position in their prosecutions. And the district court relied upon that? It's not stated in particular evidence, but it did. I don't know if these are actually relied upon. Okay. So, unless I can talk about this, let's put that away. I want to know what the district court relied upon. What I'm understanding is Southern will call it the third-party claim. That was not before the district judge. He didn't rely upon that. He based his unjust enrichment claim based upon an amount of money that Hertz collected and, let's say, passed on to the airport, because they thought they had to do it. Not just Hertz, but every other real car company did that, right? Some other car companies did that. There's a new record about all of the other rental cars. I don't know if any of you sued any of the others. I don't know if anyone of you sued. We sued the second-largest lease market, which is an enterprise company, which becomes just LMO International Car Rental, as well. Why do you feel interested in that? Are people interested in those companies, essentially? The bottom line is, what they did, everybody did. Others didn't, yes. And Judge Hicks didn't consider that an explanation, because I assume that's not really an excuse. And I was defending his decision, but essentially, if there are laws in place, having corporate citizens, also individual citizens, simply should follow the law, and it doesn't matter what other people do, based upon the unjust enrichment part. If the record seems to show that Hertz got nothing, other than this third-party payment you're now bringing out, from the money that it collected, and it came into the airport, that claim fails, does it not? If they're going to say anything, how can they be enriched? The restitution claim does not fail under those circumstances. The restitution claim is the claim that Judge Hicks defied. I mean, we can do monetary work. Restitution based upon if the fee is owed to the airport, and the statute says that the fee is owed to the airport, then there's nothing to restore, is there? Oh, there is something to restore. First of all, the fee that consumers paid was not owed to the airport. In fact, they did not actually pay a fee. All they paid was fee recovery. There was no fee recovery owed to the airport. The fee recovery was something that Hertz would use to recover its fee. I would also notice that if the concession is due recovery, and the customer is referred to no concession, or if, for instance, it's a statute, the statute arguably authorized them to recover that fee, right? The statute did not authorize them to recover that fee. But you said Judge Hicks' construction on the original statute, right? If we understand that Judge Hicks' and others' construction of the statute, including the operators of the Reno airport, is correct, yes. Okay, if we disagree with Judge Hicks' construction of the statute, does that make the whole thing the other way around? The case does depend on the fact that our clients did not pay a fee, did not pay a concession fee, did not pay anything to the airport. They paid a fee recovery that Hertz collected and retained, and then Hertz and other obligations to the airport that were not our clients' obligations. That is, in fact, what our case depends on. And to Judge Gould's question, if – and I'm just speaking regularly here, don't worry. If we believe that the statute is a reasonable draft that was clear and permit this, what do we do with the class certification? The class – it has been certified, which means that all class members are publicly bound by injunction. Okay, so if the case gets dismissed, they're bound as well. There is a question before this court about whether class certification is proper, so if the court also rules that class certification was improper, would that not affect the case? I share with Mr. Brody some confusion about what would happen in that circumstance. Counsel, are you raising the deceptive trade practice that I claim is challenging Judge Hicks' ruling on that? Yes, we have it. Counsel, do you believe that Judge Hicks misconstrued the deceptive trade practice? And what's the basis of your ruling? Well, Judge Hicks said correctly that another violation of this statute would also be a violation of the deceptive trade practice. It's active under the precise wording of the deceptive trade practice. Did he go against you on that? Yes. Judge Hicks, we think, erroneously said that there was a knowing violation. There was a violation, but not a knowing violation. Well, what evidence is there of a knowing violation? There are two aspects. One is, what does knowing mean? And if we consider that knowing in this circumstance means that they knew that they were charging a concession fee recovery, it does not necessarily mean to do a violating of the law. However, to the extent that Judge Hicks' ruling depends on the concept that they were knowingly violating the law, there's considerable evidence. Their own lobbyist in 1995 said that it was illegal, that they were legally precluded from charging a concession fee recovery, and that's why they wanted to change the statute in 1995. They said they like it, but the legislature did not accept that argument, or did not make change to the law at that time. So their own lobbyist said in 1995 that Hertz needed legislation because it was currently unable legally to charge a concession fee recovery, which it needed to compete with the other. So does your Court rely upon what is obvious or Hertz said in 1995? Well, the Court did not find a knowing violation, but there's part of the evidence that we would implore anyone with a knowing violation. But there's more. In 2004, 2005, and 2006, the Reno Airport Authority said in various communications that they were releasing bids to Hertz directly, and some to all of the other on-airport rental companies as well, explicitly stating that the concession fee recovery is not a fee paid to an airport. It's a fee paid by the car rental company that should not be surcharged under Nevada law. So they received that message in 2004, 2005, and 2006. That's a further extensive record. Beyond that, Judge Hicks told them in 2007 that they should not be that this charge was an illegal charge. And they continued to make these charges, even after a ruling by a federal judge, a federal district court judge stating that these fees were illegal to continue to charge these fees. That tells us two things. One, it became a knowing violation at that time. Two, that there must be some economic incentive. Hertz must believe these fees are profitable. Because otherwise, why would they continue to charge these fees, even after being told by both the airport authority now and by a federal district court judge that these fees are improper, are illegal? I'd also say that the grant of equitable release, first of all, is only a few hundred pieces of discretion standard. And they believe that the Nevada case of Hellman versus Nevada is dispositive as to what other remedies available there to remark with a similar case. It also involved a fee that was charged outside of the law, in that case by an insurance broker. It also involved, or involved, something that Hertz Grants is doing, which is complete disclosure of a defective quote to the broker's customers and to the division of insurance at the time. Mr. Hellman, as you wrote a letter to the division of insurance, saying he was going to institute these fees, which Hertz did not actually make comparable to that of Hertz, but to the extent that it matters whether or not Hertz was fully disclosing the information, the answer is it doesn't matter, because the Felton case doesn't matter. And Mr. Felton was found by the district court. Mr. Felton had his license suspended, and he was ordered to provide restitution to his customers for the 23rd hour fees. The district court, he turned up in a state district court in Nevada, and the district court found that he had acted in good faith at all times, and accordingly his license should not be revoked and he should not have to refund the money that he had received. And the Nevada Supreme Court partly accepts and partly rejects that, but the Nevada Supreme Court held that he had or accepted the district court's ruling that he had acted in good faith. And if there are two things in here, it's not that he acted in good faith or he had a fee, but it doesn't really matter, at least outside of the deceptive chain practices, it doesn't matter if he acted in good faith, as the Felton case demonstrates. Mr. Felton, the license revocation to Mr. Felton was reversed because he had acted in good faith, but he still had to return the money because it wasn't his money, because it was an illegal charge, and to some extent because he had been told of that by a regulatory officer during the time that he was charging this, which is precisely the situation we have here. In our case, he wasn't an insurance division. Earlier he was a federal district court judge, and they told her that the charge was illegal and that it should not be charged. So we think that case is very much responsive. We also had some problems in Nevada Supreme Court in certain things that are binding on this court. If they apply to the case. If they apply to the case, that's right. We also asked about whether the money was passed through or not, and again, we have a case, the Wheeler-Springs Plaza case, the Wheeler-Springs Plaza case that was completely concise about that issue. The Wheeler-Springs Plaza was entitled to restitution of a judgment, a district court judgment that included a line for a trace fees and a dollar amount that it had paid, but it also appealed the underlying ruling. The issue arose after it was successful on appeal, whether it was entitled to get its money back, since it had already paid the full amount of the judgment, and the Nevada Supreme Court, again, binding on this court, ruled in that circumstance that not only was Wheeler-Springs Plaza entitled to get its money back for the amount of the judgment, but the plaintiff was also entitled to get its money back for the trace fees judgment that it had paid. And the opposing parties said, well, you know, we can actually pay those trace fees to our juries, as we had to under our contract with injuries, and that was found to be irrelevant. The plaintiffs who received the unjust impeachment, including the amount that was all labeled for trace fees, had to return us a little bit of the money that they had received. I don't even have a particular point, but I guess I would get back to the fact that if Judge Higgs' argument misconstrued the statute, and the statute expressly authorized herds to do what it did, there is no unjust impeachment, right? There's nothing illegal. It would be an injustice to herds, even if what they did was... That's not what we're talking about here. You said the district judge did not rely upon that in awarding the unjust enrichment. He relied exclusively on the amount of money that herds said he would pay to the airport. But that's correct, too. If the statute did allow herds to make these charges, then it would be a case that is correct. No, we don't think that's the circumstance here. No, I get it. It wouldn't be here if you didn't. That's correct. And Judge Higgs didn't. Okay. Anything further, counsel? We have reserved time for a rebuttal. No. Yes, I do have a quick thing to say. We went to a voluntary payment doctrine. That does not fit the circumstances of this case. Voluntary payment depends on several things, one of which is complete knowledge, at least of all relevant facts. In the one Nevada Supreme Court case in the last century, also stated at length that the plaintiff, I assume, was being, quote, actual knowledge not only of all the facts, but also of the relevant laws. He had written a letter before. He made the voluntary payment to the other party, supposedly stating the statute that he believed was governing this payment and saying that he would not make any payments that were not within this particular statute, which he put the statutory number and everything in the letter. Then he made a full payment of the amount that he had been billed. So that's a very fair case of a voluntary payment, despite complete knowledge of the facts and some knowledge of legal dispute as well. There's some question about whether knowledge of the law is a prerequisite for the voluntary payment defense. But in this case, our clients, and we believe none of the class members had knowledge of the relevant facts, either, because nobody knew what a concession to recovery was. I certainly didn't before I got involved in this case. Our clients didn't, according to their depositions, and it was simply an ambiguous reference to something that some people might have believed was a tax that everyone probably certainly believed was an illegal thing, whatever it was. And as far as that goes, they did not have full knowledge of the relevant facts. The Nevada Association used to seek defense to the voluntary payment defense based on an error of law that is produced by the opposing party's conduct. And in this case, it certainly induced the opposing party's conduct in making the payment,  which certainly suggests that there was a charge that was either required or produced by law there, and that's occurred since the payment. Finally, there were several reasons that Judge Hicks relied on, that the voluntary payment defense simply should not apply to a consumer case. And the Nevada Supreme Court did cite the Indiana Supreme Court ruling in the Whiteman case, which states that it would tell ultimately that the voluntary payment defense did not apply to a consumer case. And I'll add one more that's not in the pre-switches section. The 159 of the credit card code, which states that all the conditions, including the 1575, are non-waivable. And to make some quality of payment defense a form of waiver, I think that it is irreversible under that statute. I also want to say briefly, recently the Executive Re-judgment issued an issue that Judge Hicks found had been waived by the district court. At the district court level, it's certainly part of the statute, and the 17.1 period doesn't apply to these kinds of actions. And there's a Nevada Supreme Court case, Chris Becker, in 2008 in the Nevada Supreme Court case, which expressly applies to Section 17.1, voting for pre-judgment interest to be withdrawn. Thank you, counsel. Your time has expired. Mr. Brody, you have some reserve time. Thank you. I'd like to address the issue of remedy. I started there in the plaintiff's surcharge argument. We have to keep in mind what the district court said here. In the motion to dismiss, the district court said the issue before the court is not whether airport concession fees may be charged to customers. The district court never addressed this issue of whether there was a finding of a surcharge, and if that has evolved under the plaintiff's case, reversal is required. But what is the evidence on that point? The evidence on that point is that in 1995 or 1996, the rental car companies, in response to the legislative changes and the changes in their leases, which for the first time permitted this practice, began listing concession fees separately, while still at the same time always listing the all-in price, that persisted to the class period which began in 2003. So the plaintiff's argument is that for some reason this change in 1995 persisted in increasing price in 2003 and thereafter. There was evidence presented at the damage phase, at the remedy phase of the case, and the evidence showed that there was no statistically significant change in price as a result of this unlawful payment. But even if there was a change in price, the statute does not prohibit Hertz from setting any price it wishes. It could charge $1,000 a day for all it carries with these customers, but it could do that and still comply with the statute. For the plaintiff's damage theory, the way they tried to show any damage at all was to assume, was to instruct their experts to assume that Hertz would have to follow the law as Judge Hughes described it, that none of the other rental car companies would, and that this disequilibrium in the car companies would exist from 19-whatever, 95 or 96, until the present day. That makes no sense. And that may be for that reason. I'm not going to presume that Judge Hughes did not find damages. So this idea of surcharge, the claim that Hertz charged too much, is a total red herring, unsupported by the district court's findings and by the evidence. How does that relate to the remedy cases? The plaintiff relies on the Feltman case, and also talks about the Feltman case. Those are great cases. In Feltman, the defendant charged a $25 fee. He was not allowed to charge, and he was told by the insurance regulator, don't charge it, and he charged it anyway, and he had to pay that back. The court didn't use the word restitution. But there was awful conduct and money retained by Feltman. In Landex, the other case that we hear about, the district court, the Nevada Supreme Court, reversed an order of refund. Again, it didn't use the word restitution. But it reversed the finding. And in the cases that absent consumer loss, or loss by the plaintiff, or fraudulent conduct, there could be no order of refund. Those cases fit neatly within our remedy argument. Why did Hertz not change its practice in 2007, when the district court ruled? The district court didn't find that Hertz violated the statute. The district court denied a motion to dismiss and said that it was an ambiguous statute. And frankly, at that time, Hertz's contracts with airports, in one case, required this practice, and in the other case, permitted this practice. So for a variety of reasons, Hertz has followed the law as he understood the law to be. He's never been told by the Nevada regulators that it was wrong. It was repeatedly told by the airport authorities that it was right. And for that reason and all the others in the briefs, we request the court to reverse the judgment. Thank you, counsel. Thank you. The case just argued will be submitted for decision. The court will adjourn.
judges: O'scannlain, Gould, M. Smith